# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TROY D.,                                )
                                        )
        Plaintiff,          )
                                        )
    v.                              )       1:23CV1023
                                        )
LELAND C. DUDEK,                        )
Acting Commissioner of Social           )
Security,                               )
                                        )
        Defendant.[1]       )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Troy D., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 3 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 6 (Plaintiff's Brief); Docket Entry 8 (Commissioner's

---

[1] President Donald J. Trump appointed Leland C. Dudek as the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland C. Dudek should substitute for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Memorandum)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 232-35), alleging a disability onset date of March 29, 2022 (see Tr. 232, 234).  Upon denial of that application initially (Tr. 108-18, 130-39) and on reconsideration (Tr. 119-29, 141-50), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 151).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 40-84.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act (Tr. 21-39), and the Appeals Council thereafter denied Plaintiff's request for review (Tr. 8-13, 229-31), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2024.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since March 29, 2022, the alleged onset date.
>
> 3.  [Plaintiff] has the following severe impairments: degenerative disc disease, a rotator cuff tear of the right shoulder, degenerative joint disease, sarcoidosis, migraines, obstructive sleep apnea, diabetes and diabetic

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 7 at 1.)

2

retinopathy, depression, anxiety, and posttraumatic stress disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except lifting fifty pounds occasionally and twenty-five pounds frequently; carry fifty pounds occasionally and twenty-five pounds frequently; sit for six hours; stand for six hours, and walk for six hours; push/pull as much as he can lift/carry; occasionally reach overhead to the right; reach frequently to the right; climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; balance frequently; stoop frequently; kneel frequently; crouch frequently; work at unprotected heights occasionally; work with moving mechanical parts occasionally; work in weather frequently; work in humidity and wetness frequently; work in dust, odors, fumes and pulmonary irritants frequently; work in extreme cold occasionally, in extreme heat occasionally, in vibration occasionally, and in moderate noise; is able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work); perform simple work-related decisions; interact with supervisors frequently; interact with coworkers occasionally; never interact with the public; make simple work-related decisions; and perform simple, routine, and repetitive tasks.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

3

. . .

> 11. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, from March 29, 2022, through
> the date of th[e ALJ's] decision.

(Tr. 26-35 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

*Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  *Hunter*, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  *Mastro*, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  *Id.* at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

5

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  <u>Id.</u>  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work."  <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174

---

[3] The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

6

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he [ALJ's] decision is not supported by substantial evidence because [he] erred as a matter of law by failing to adequately incorporate in the RFC limitations related to social interactions" (Docket Entry 6 at 8 (bold font, capitalization, and block formatting omitted)); and

2) "[t]he [ALJ] erred as a matter of law by failing to adequautely [sic] evaluate if [] Plaintiff's debilitating migrane

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[sic] headaches equaled Listing 11.02B" (id. at 17 (bold font, capitalization, and block formatting omitted)).

The Commissioner contends otherwise and seeks affirmation of the ALJ's decision. (Docket Entry 8 at 10-21.)

## 1. Social Interaction Limitations

In Plaintiff's first issue on review, he argues that "[t]he [ALJ's] decision is not supported by substantial evidence because [he] erred as a matter of law by failing to adequately incorporate in the RFC limitations related to social interactions." (Docket Entry 6 at 8 (bold font, capitalization, and block formatting omitted).) In that regard, Plaintiff notes that the "state agency[] psychological consultants[] issued concurring opinions . . . that [] Plaintiff 'can tolerate coworkers and supervisors in a **non-public setting in which interactions are brief, superficial and task oriented** with only incidental contact with the general public.'" (Id. at 9 (emphasis added by Plaintiff) (purporting to quote Tr. 116 & 127).) According to Plaintiff, "despite assessing moderate limitations in the domain of interacting with others and despite finding the opinions of [the state agency psychological consultants] regarding social interaction limitations persuasive" (id. at 11 (referencing Tr. 29, 32-33)), "the ALJ did not explain why he limited [] Plaintiff to occasional interaction with coworkers but allowed for frequent interactions with supervisors" (id.), and "committed a reversible

error by omitting 'superficial' interactions with coworkers and supervisors from the RFC" (id. at 12 (purporting to quote Tr. 115 & 127) (referencing Tr. 29-30)).  In Plaintiff's view, the ALJ's above-described errors do not qualify as "harmless" (id. at 16), because "[t]he Program Operations Manual System ('POMS') provides . . . [that t]he ability to accept instructions and respond appropriately to criticism from supervisors and the ability to get along with coworkers is [sic] 'critical' for the performance of unskilled work" (id. (quoting POMS DI 25020.010(B)(3)(k), (l))), and "[t]he [VE] testified that[,] if an individual was unable to interact with supervisors and coworkers appropriately, there would be no available jobs" (id. (citing Tr. 82)).  For the reasons that follow, those arguments miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 232-35)), the SSA has enacted substantial revisions to the regulations governing the evaluation of administrative findings by state agency consultants, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Under the new regulations, ALJs need not assign an evidentiary weight to administrative findings, see 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any . . . prior administrative medical finding(s)"); instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she]

10

find[s] all of the . . . prior administrative medical findings in [a claimant's] case record," 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a state agency consultant "provides multiple . . . prior administrative medical finding(s)," the ALJ can evaluate the persuasiveness of such findings "together in a single analysis" and need not articulate how he or she considered those findings "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an administrative finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an administrative finding. 20 C.F.R. § 404.1520c(b)(2).[7] The ALJ must address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the administrative finding, 20 C.F.R. § 404.1520c(c)(3)-(5) — only when the ALJ finds two or more administrative findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

---

[7] "Supportability" means the extent to which the objective medical evidence and explanation provided by the state agency consultant supports the consultant's administrative finding. See 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes the extent to which evidence from other medical and nonmedical sources harmonizes with the state agency consultant's administrative finding. See 20 C.F.R. § 404.1520c(c)(2).

11

In this case, the initial-level state agency psychological consultant opined that Plaintiff's mental impairments caused <u>moderate</u> limitation in his abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself (<u>see</u> Tr. 111), as well as that, "[o]verall, [Plaintiff] . . . [was] limited to [simple, routine, and repetitive tasks ('SRRTs')]" (Tr. 112). With regard to Plaintiff's interaction-related limitations in the mental RFC, the initial-level consultant believed that "[Plaintiff] c[ould] tolerate coworkers [and] supervisors in [a] non public setting in which interactions [we]re <u>brief, superficial and task-oriented [with ] only incidental contact [with the ] general public</u>." (Tr. 116 (emphasis added).)

Upon Plaintiff's request for reconsideration, a different consultant reviewed the record and found that Plaintiff had <u>mild</u> limitation in his ability to understand, remember, or apply information, and <u>moderate</u> limitation in his abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (<u>See</u> Tr. 122.) That consultant thereafter issued three administrative findings regarding Plaintiff's interaction-related limitations in the mental RFC: 1) "[Plaintiff is] capable of SRRTs in [a] low-stress, non-producti[on] environment with <u>limited personal demands</u>" (Tr. 123 (emphasis added)); 2) "[Plaintiff] appears to be able to sustain concentration at the

level needed to perform SRRTs in [a] low stress, low production work setting with <u>minimal interpersonal requirements</u>" (Tr. 127 (emphasis added)); and 3) "[Plaintiff's] interaction skills are <u>mildly to moderately</u> impaired[, and he] is capable of working in most settings that <u>do not require extensive contact with the public</u>" (id. (emphasis added)).

The ALJ provided the following analysis of the persuasiveness of the consultants' administrative findings:

> [The initial-level state agency psychological consultant] determined [Plaintiff] had moderate limitations in the ability to understand, remember, or apply information; <u>moderate limitations in the ability to interact with others</u>; moderate limitations in the ability to concentrate, persist, or maintain pace; and moderate limitations in the ability to adapt or manage oneself. [That consultant] determined [Plaintiff] can perform [SRRTs]. This determination is <u>somewhat persuasive</u>. The review of [the consultant], which included [Plaintiff]'s mental status examinations and counseling, supported this opinion. <u>The evidence was consistent with moderate limitations in the ability to interact with others</u> and concentrate, persist, or maintain pace. <u>[Plaintiff] reported he had been fired due to being mean to others. He reported difficulty around more than two people.</u> [He] reported a varied ability to pay attention. However, he had no more than mild limitations in the ability to understand, remember, or apply information and adapt or manage oneself. [Plaintiff] generally had normal cognition and memory. He reported an ability to prepare his own simple meals. Additionally, [he] reported independence in activities of daily living.
>
> . . . [The reconsideration-level state agency psychological consultant] determined [Plaintiff] had mild limitations in the ability to understand, remember, or apply information; <u>moderate limitations in the ability to interact with others</u>; moderate limitations in the ability to concentrate, persist, or maintain pace; and moderate limitations in the ability to adapt or manage

13

oneself. [That consultant] determined [Plaintiff] can perform [SRRTs] in low stress, non producti[on] environment with limited personal demands. This opinion is <u>somewhat persuasive</u>. The review of [the consultant], which included [Plaintiff]'s mental status examinations and counseling, supported this opinion. <u>The evidence was consistent with</u> the mild limitations in the ability to understand, remember, or apply information, <u>moderate limitations in the ability to interact with others</u>; moderate limitations in the ability to concentrate, persist, or maintain pace. <u>[Plaintiff] reported he had been fired due to being mean to others. He reported difficulty around more than two people</u>. [He] reported a varied ability to pay attention. [He] generally had normal cognition and memory. However, the evidence was consistent with no more than mild limitations in the ability to adapt or manage oneself. He reported an ability to prepare his own simple meals. Additionally, [he] reported independence in activities of daily living.

(Tr. 32-33 (emphasis added) (internal parenthetical citations omitted).)

Plaintiff argues that, because the ALJ found the evidence "consistent with" the consultants' administrative findings that Plaintiff's mental impairments caused moderate limitation in his ability to interact with others, the ALJ therefore "credited and found persuasive" (Docket Entry 6 at 10 (citing Tr. 32-33, and referencing Tr. 111, 122)) the administrative findings of both consultants that Plaintiff could handle only "'**brief, superficial and task oriented**'" interactions with supervisors and coworkers (id. at 9 (emphasis added by Plaintiff) (purporting to quote Tr. 116 & 127)). As detailed below, that argument lacks merit.

To begin, Plaintiff's argument glosses over the significant fact that the ALJ found the state agency psychological consultants'

14

administrative findings only "somewhat persuasive" (Tr. 32-33 (emphasis added)). (See Docket Entry 6 at 9-17.) In that regard, although the ALJ agreed with the consultants' administrative findings at steps two and three of the SEP that Plaintiff's mental impairments resulted in moderate limitation in his ability to interact with others (see Tr. 32-33; see also Tr. 111, 122 (consultants' findings at steps two and three)), the ALJ did not expressly credit the consultants' mental RFC administrative findings regarding Plaintiff's interaction ability (see Tr. 32-33). That fact distinguishes this case from others where courts remanded based on an ALJ's deeming an administrative finding fully persuasive but then neither adopting nor explaining the failure to adopt some of that finding's limitations in the RFC. See, e.g., Jennifer S. v. Berryhill, No. CV 17-2487, 2018 WL 5112407, at *5 (D. Md. Oct. 19, 2018) (unpublished) ("'While the ALJ was by no means required to simply adopt all of the limitations found by the state reviewing agent, the ALJ was required to explain the ALJ's basis for rejecting them if the ALJ chose to do so, particularly in light of the fact that the ALJ expressly gave significant weight to this opinion in formulating the RFC and hypothetical.'" (quoting Harden v. Commissioner of Soc. Sec., Civ. No. 13-906, 2014 WL 4792294, at *4 (W.D. Pa. Sept. 24, 2014) (unpublished))).

Moreover, no basis exists for the Court to find that the ALJ implicitly intended to adopt the consultants' mental RFC

15

administrative findings regarding Plaintiff's interaction ability. Contrary to Plaintiff's assertions, the consultants <u>did not</u> "issue[] <u>concurring</u> opinions . . . that [] Plaintiff 'can tolerate coworkers and supervisors in a **non-public setting in which interactions are brief, superficial and task oriented.**'" (Docket Entry 6 at (underscoring added) (bolding added by Plaintiff) (purporting to quote Tr. 116 & 122).) Only the initial-level consultant offered that administrative finding. (<u>See</u> Tr. 116.) In contrast, and as discussed above, the reconsideration-level consultant found that, overall, Plaintiff's mental impairments necessitated a work "environment with <u>limited personal demands</u>" (Tr. 123 (emphasis added); <u>see also</u> Tr. 127 (finding, when assessing Plaintiff's concentration-related abilities in mental RFC, that he needed "work setting with <u>minimal interpersonal demands</u>" (emphasis added))) but, when analyzing Plaintiff's interaction-related abilities in the mental RFC, noted that Plaintiff's "interaction skills [we]re <u>mildly to moderately impaired</u>," as well as that "[he wa]s capable of working <u>in most settings that d[id] not require extensive contact with the public</u>" (Tr. 127 (emphasis added)). Thus, not only did the reconsideration-level consultant not limit Plaintiff to brief, superficial, and task-oriented interactions with coworkers and supervisors like the initial-level consultant did, but she omitted

16

<u>any</u> limitations on Plaintiff's interactions with those individuals. (<u>Compare</u> Tr. 116, <u>with</u> Tr. 127.)

Given those circumstances, it would make little sense for the Court to find that, by deeming the consultants' administrative findings only "<u>somewhat</u> persuasive" (Tr. 32-33 (emphasis added)), the ALJ intended to adopt <u>both</u> consultants' interaction-related RFC limitations, when those limitations directly conflict with each other (<u>compare</u> Tr. 116, <u>with</u> Tr. 127). The Court finds more reasonable that the ALJ, after adopting the consultants' administrative findings at steps two and three of the SEP that Plaintiff had moderate limitation in his ability to interact with others (<u>see</u> Tr. 32-33; <u>see also</u> Tr. 111, 122), formulated supervisor and co-worker interaction limitations in the mental RFC that struck a balance between a "<u>brief, superficial, and task-oriented</u>" limitation (Tr. 116 (emphasis added) (initial-level consultant's opinion)) and <u>no</u> limitation (<u>see</u> Tr. 127 (reconsideration-level consultant's opinion)) on interaction with supervisors and co-workers, i.e., the ALJ limited Plaintiff to frequent interaction with supervisors and occasional interaction with co-workers (<u>see</u> Tr. 30). <u>See</u> <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)); <u>see also</u>

17

_Gilmore v. Kijakazi_, No. 1:21CV420, 2022 WL 2869047, at *8 (M.D.N.C. July 21, 2022) (unpublished) ("[T]he ALJ's decision reveals that she found neither [the p]laintiff's testimony [supporting less-than-sedentary exertion] nor the medium-RFC opinions from the prior ALJ and the state agency medical consultants fully persuasive and instead struck a balance between those two opposing viewpoints."), _recommendation adopted_, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022) (unpublished) (Biggs, J.); _McNeill v. Berryhill_, No. 1:16CV1081, 2017 WL 1184187, at *10 (M.D.N.C. Mar. 29, 2017) (unpublished) ("[B]y adopting a light-exertion RFC, the ALJ struck a balance between the state agency [medical consultant]'s medium-exertion RFC and the less-than-sedentary-exertion limitations opined by [two treating physicians]."), _recommendation adopted_, slip op. (M.D.N.C. Apr. 24, 2017) (Eagles, J.).

The foregoing considerations also make clear why the _Bostic_ case relied on by Plaintiff does not aid his cause. (_See_ Docket Entry 6 at 13-15 (citing _Bostic v. Commissioner of Soc. Sec._, No. 5:22CV141, 2024 WL 551478, at *3-5 (W.D.N.C. Feb. 12, 2024) (unpublished)).) In that case, "the [s]tate [a]gency psychological consultants . . . opined that [the plaintiff] was able to tolerate superficial interactions with public, coworkers and supervisors while completing simple tasks," and "[t]he ALJ found the . . . consultant[s'] opinions were _persuasive except that the_

18

record d[id] not support limitations in concentration, persistence, or maintaining pace, as the [plaintiff]'s mental status examinations reveal intact attention and concentration." Id. at *4 (internal quotation marks omitted). The court in Bostic held that, "[b]ecause the ALJ omitted the [s]tate [a]gency psychological consultants' opinion that [the plaintiff] could tolerate superficial interactions with public, coworkers, and supervisors, and failed to include and [sic] explanation explaining the omission after finding the opinions persuasive, the ALJ's analysis is not supported by substantial evidence." Id. at *5 (emphasis added). In contrast, here, as discussed above, the ALJ found the state agency psychological consultants' opinions only "somewhat persuasive" (Tr. 32 (emphasis added)), and did not expressly credit the initial-level consultant's limitation to "brief, superficial and task-oriented" interactions (Tr. 116).

Furthermore, even assuming, arguendo, that the ALJ erred by not adopting the initial-level consultant's "brief, superficial, and task-oriented" limitation on interaction with supervisors and co-workers (Tr. 116), Plaintiff still has not shown that such an error prejudiced him. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). All three jobs

19

cited by the VE (and adopted by the ALJ at step five of the SEP (see Tr. 34)) have <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") codes containing a fifth digit of 8. (See Tr. 80-81 (citing <u>DOT</u>, No. 522.6**8**7-038 ("Turner"), 1991 WL 674306 (G.P.O. 4th ed. rev. 1991); <u>DOT</u>, No. 651.6**8**7-010 ("Lithographed-Plate Inspector"), 1991 WL 685716); <u>DOT</u>, No. 727.6**8**7-030 ("Battery Stacker"), 1991 WL 679666)), representing the lowest level of human interaction in the labor market, see <u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.). The VE further testified that 68,000 turner jobs, 70,000 inspector jobs, and 89,000 stacker jobs existed in the national economy (see Tr. 81), which clearly constitute significant job numbers under Fourth Circuit precedent, see <u>McCall v. Saul</u>, 844 Fed. Appx 680, 681 (4th Cir. 2021) (citing with approval cases holding that 25,000 and 11,000 jobs nationally qualified as significant job numbers); <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 (4th Cir. 1979) ("We do not think that the approximately 110 jobs [available regionally] testified to by the [VE] constitute an insignificant number."). Moreover, the <u>DOT</u> listings for those jobs rate the activity of "Taking Instructions – Helping" as "Not Significant" and reflect the tasks of "Talking" and "Hearing" as "Not Present - Activity or condition does not exist." See <u>DOT</u>, No. 522.6**8**7-038 ("Turner"), 1991 WL 674306; <u>DOT</u>, No. 651.6**8**7-010

20

("Lithographed-Plate Inspector"), 1991 WL 685716); <u>DOT</u>, No. 727.6**8**7-030 ("Battery Stacker"), 1991 WL 679666.

Consequently, the record does not support a finding that remand for the ALJ to include in the RFC the initial-level consultant's "brief, superficial, and task-oriented" limitation on interaction with supervisor and co-workers would result in a different outcome in Plaintiff's case. <u>See</u> <u>Ridley G. v. Commissioner of Soc. Sec.</u>, No. 1:20CV773, 2021 WL 4307507, at *8, *13 (N.D.N.Y. Sept. 22, 2021) (unpublished) (deciding that RFC restriction to <u>no</u> interaction or <u>tandem tasks</u> with coworkers harmonizes with jobs with <u>DOT</u> level 8 interaction); <u>Scott C. v. Commissioner of Soc. Sec.</u>, No. 2:20CV109, 2021 WL 2682276, at *4-5 (D. Vt. June 30, 2021) (unpublished) ("'[L]evel 8 interaction [in the <u>DOT</u>] is compatible with an RFC limiting a claimant to only <u>superficial</u> contact with coworkers, supervisors, and the public.'" (quoting <u>Alie v. Berryhill</u>, 4:16CV1352, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017) (unpublished)) (emphasis added)); <u>Wilson v. Saul</u>, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020) (unpublished) (Webster, M.J.) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC . . ., any error would be harmless because the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions. In fact, the [<u>DOT</u>'s] descriptions of the jobs identified by the VE list interaction with "People" as

21

being "Not Significant."), _recommendation adopted_, slip op. (M.D.N.C. Nov. 24, 2020) (Biggs, J.); _Eldridge v. Berryhill_, No. CV 16-5289, 2018 WL 1092025, at *2 (W.D. Ark. Feb. 28, 2018) (unpublished) (finding jobs categorized by _DOT_ as involving level 8 interaction consistent with restrictions to "_limited_ contact with the general public" and "_incidental_ contact with co-workers" (emphasis added)); _Shorey v. Astrue_, No. 1:11CV414, 2012 WL 3475790, at *6 (D. Me. July 13, 2012) (unpublished) (holding that "inclusion of a limitation to _occasional_, _brief_, and _superficial_ contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with a _DOT_ "People" rating of 8), _recommendation adopted_, 2012 WL 3477707 (D. Me. Aug. 14, 2012) (unpublished); _Flaherty v. Halter_, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction under the _DOT_ compatible with ALJ's limitation to "_brief superficial_ type of contact with co-workers and supervisors and members of the public" (emphasis added)).[8]

In sum, Plaintiff's first assignment of error fails as a matter of law.

---

[8] That body of case law also dooms Plaintiff's argument that "the ALJ did not explain why he limited [] Plaintiff to occasional interaction with coworkers but allowed for frequent interactions with supervisors." (Docket Entry 6 at 11.) Even if the ALJ had limited Plaintiff to occasional (or brief and superficial) interaction with supervisors, the jobs relied on by the ALJ at step five of the SEP would have accommodated that limitation.

## 2. Listing 11.02B

Plaintiff's second and final issue on review maintains that "[t]he [ALJ] erred as a matter of law by failing to adeqautely [sic] evaluate if [] Plaintiff's debilitating migrane [sic] headaches equaled Listing 11.02B." (Docket Entry 6 at 17 (bold font, capitalization, and block formatting omitted).) In that regard, Plaintiff points out that, "[b]ecause there is no [l]isting specifically for migraine headaches, [Social Security Ruling] 19-4p[, Titles II and XVI Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635 (Aug. 26, 2019) ("SSR 19-4p"),] instructs ALJs . . . [t]o evaluate the severity and duration of a primary headache disorder under the Listing 11.02(B) criteria." (Docket Entry 6 at 18 (citing SSR 19-4p, 2019 WL 4169635, at *7).) According to Plaintiff, despite the fact that "Plaintiff d[id] not have a seizure disorder" (id. at 19), "[t]he ALJ found that [L]isting [11.02(B) wa]s not equaled because [] Plaintiff did not have **evidence of seizure, syncope, or loss of consciousness**" (id. (emphasis added by Plaintiff) (citing Tr. 28)). In Plaintiff's view, "SSR 19-4p requires the ALJ to consider whether Plaintiff's "**headaches**" are equal in severity and duration to the criteria in [Listing] 11.02(B) . . ., [and] not whether [] Plaintiff experienced seizures or syncope or loss of consciousness." (Id. (emphasis added by Plaintiff).) Plaintiff contends that "[t]he ALJ's failure to evaluate migraines under the

23

correct legal standard as required by SSR 19-4p in evaluating Listing 11.02 requires a remand and a showing of harm is not necessary." (Id. at 20.) Those contentions fall short.

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (internal bracketed numbers omitted)). "The listings set out at 20 [C.F.R. P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments medically equals a listing when it is at least equal in severity

24

and duration to the criteria of any listed impairment." Grimes v.
Colvin, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31,
2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R.
§ 416.926(a)-(b)) (emphasis added).

"[O]nly where there is ample evidence in the record to support
a determination that a claimant's impairment meets or equals one of
the listed impairments must the ALJ identify the relevant listed
impairments and compare them to evidence of a plaintiff's
symptoms." Reynolds v. Astrue, No. 3:11CV49, 2012 WL 748668, at *4
(W.D.N.C. Mar. 8, 2012) (unpublished) (emphasis added) (citing Cook
v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); see also
Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL
417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("Cook,
however, does not establish an inflexible rule requiring an
exhaustive point-by-point discussion [of listings] in all
cases.").[9]

---

[9] The Cook court's confinement of the ALJ's duty to explicitly identify listings
and compare their elements to the record to situations in which the
claimant comes forward with "ample evidence" that an impairment meets a listing
makes sense. "Step two of the [SEP] is a threshold question with a de minimis
severity requirement," Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir.
2011) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)), but "[t]he criteria
in the medical listings [at step three] are demanding and stringent," Falco v.
Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotation marks omitted); see
also Zebley, 493 U.S. at 532 ("[The SSA] has set the medical criteria defining
the listed impairments at a higher level of severity than the statutory
[disability] standard."). Accordingly, the mere fact that an impairment
qualifies as severe at step two does not suggest that it meets a listing at step
three. No reason thus exists for courts to require ALJs to document the manner
in which every impairment deemed severe at step two fails to meet a listing at
step three; rather, common sense supports the Fourth Circuit's decision in Cook
to insist that ALJs discuss a specific listing only when the claimant marshals
"ample evidence" that an impairment actually meets the criteria for that listing.
Nor does the more recent ruling in Radford counsel otherwise. Although the
Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at

Listing 11.02(B) requires proof of "[d]yscognitive seizures [] occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.02(B) (internal parenthetical citations omitted). The introduction to the neurological listings describes "[d]yscognitive seizures" as "characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." Id., ¶ 11.00(H)(1)(b).

SSR 19-4p acknowledges that no specific listing exists for migraine headaches and notes that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in [L]isting 11.02[(B)]." SSR 19-4p, 2019 WL 4169635, at *7 (emphasis added). To determine whether a claimant's migraine headaches medically equal the criteria of Listing 11.02(B), an ALJ must:

> consider[ a] detailed description from a[n acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or

_____

step three, it did so consistently with the standard set in Cook, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed] a particular listing]." Radford, 734 F.3d at 295.

inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Id. (emphasis added).

In this case, the ALJ acknowledged SSR 19-4p and evaluated Plaintiff's migraine headaches under Listing 11.02, but found that Plaintiff's migraine headaches did not medically equal that Listing, because "[Plaintiff] did not have evidence of seizure, syncope, or loss of consciousness." (Tr. 28.) The ALJ erred by relying on the absence "of seizure, syncope, or loss of consciousness" (id.), as the ALJ should have instead considered the factors in SSR 19-4p described above. That error, however, remains harmless under the circumstances presented here, because, as explained more fully below, the record lacks "ample evidence" that Plaintiff's migraine headaches could have medically equaled Listing 11.02(B), Cook, 783 F.2d at 1172-73.

As an initial matter, Plaintiff made no effort to point out record evidence (let alone "ample evidence," id.) demonstrating that his migraine headaches could have medically equaled the criteria of Listing 11.02(B) but, instead, asserted, without citation to authority, that "[t]he ALJ's failure to evaluate [Plaintiff's] migraines under the correct legal standard . . . require[d] remand and a showing of harm [wa]s not

27

necessary." (Docket Entry 6 at 20.) Plaintiff's unsupported assertion that the ALJ's improper medical equivalence analysis under Listing 11.02(B) constituted <u>per se</u> prejudicial error conflicts with <u>Cook</u>'s "ample evidence" standard, <u>Cook</u>, 783 F.2d at 1172-73, and Plaintiff's failure to point to <u>any</u> evidence showing that his migraine headaches could have medically equaled Listing 11.02(B) precludes relief on that front, <u>see</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Hughes v. B/E Aerospace, Inc.</u>, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

Moreover, the record lacks "[a] detailed description from a[n acceptable medical source] of a typical headache event, including all associated phenomena," SSR 19-4p, 2019 WL 4169635, at *7. Although the record reflects Plaintiff's <u>history</u> of migraine headaches (<u>see, e.g.</u>, Tr. 370-71), Plaintiff did not seek treatment for a migraine headache during the relevant period (<u>see</u> Tr. 358-412), and <u>denied headaches</u> at the most recent appointment with his primary care physician in the record (<u>see</u> Tr. 370 (Aug. 23,

28

2022)).[10]  Furthermore, none of Plaintiff's treatment providers indicated that he or she actually "observ[ed ] a typical headache event" or provided "a detailed description of the [observed] event," SSR 19-4p, 2019 WL 4169635, at *6, but, instead noted that Plaintiff remained in no acute distress with normal attention and concentration.  (See Tr. 386, 402, 412.)  Additionally, although Plaintiff testified that had suffered from "migraine [headaches] for several years" triggered by "bright light," "noise," and "[s]trong smells," and that caused him "to get away from people" and to seek "peace and quiet" with "no distraction" (Tr. 59), the regulations make clear that an ALJ "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment[] to that of a listed impairment," 20 C.F.R. § 404.1529(d)(3).  See Smith v. Commissioner of Soc. Sec., No. 2:21CV10093, 2022 WL 1052427, at *5 (E.D. Mich. Mar. 4, 2022) (unpublished) (crediting the Commissioner's argument that the plaintiff's "self-reported descriptions of her headaches [we]re not medically equivalent to a medical professional's observations," because "[t]he SSA considers 'a detailed description from an

---

[acceptable medical source]'" (quoting SSR 19-4p, 2019 WL 4169635, at *7)), recommendation adopted, 2022 WL 965022 (E.D. Mich. Mar. 30, 2022) (unpublished).

In short, any failure by the ALJ to provide a proper medical equivalence analysis under Listing 11.02(B) did not prejudice Plaintiff, because the record lacks "ample evidence," Cook, 783 F.2d at 1172-73, that his migraine headaches could have medically equaled the criteria of Listing 11.02(B).

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 25, 2025